May it please the court, I'm Terry Anastasio, Ropers Majeski, Cone and Bentley, appearing for appellants and cross-appellees, Kim Seng. On the off chance that Mr. Ross arrives, I'd like to reserve four minutes for response. Given the stakes in the two appeals that you just heard, this is in a lot of ways a much more pedestrian case. It involves two families who came to this country, started businesses that had had some serious success serving their communities. They came into conflict on the use of a trademark, and a judgment was entered that limited the use of my client's trademark to some extent, but resulted in no monetary compensation, no attorney's fees, and in fact, my client is permitted to continue using one of the trademarks with a modifier. What we come to the court to ask is, first of all, the court should examine the injunction, and it is, we believe, overbroad, and there is no basis for the overbreadth. But that's only the first problem with the injunction. We also believe that the trial court erred in failing to apply latches to bar the injunctive relief claim altogether. How is the injunction worded? You're prohibited from using, how do you pronounce that key? It's Cui Hong. Cui Hong, you're prohibited from using Cui Hong. Except with the modifier old man. Okay, how, you say it's too broad, how could it be, how could it be limited? Well, first of all, the company has, my clients have been using. No, my question is how could it be rewritten so that it would be limited? Oh, well, assuming that an injunction is proper, the only use, the only trademark usage should be barred is unmodified Cui Hong. And, in fact, Kim Sang has been using Cui Hong with other modifiers. I'm sorry, I'm not making myself clear. You started off by saying that the injunction was too broad. Yes. I'm saying, okay, how can, how could the judge fix it and make it less broad? What would you, what would you have? That my client is permitted to use the Cui Hong trademark with not just old man as a modifier, but all of the modifiers that they have been using for many years now. So what you mean is really tear it up, tear up the injunction? No, because it would still entitle the respondents to exclusive use of Cui Hong with no modifier alone, as they have been doing, using that trademark for many years. So what would your clients be prohibited from doing if the injunction were modified and made narrower? Using the trademark Cui Hong without a modifier. They would be prohibited from doing that? Yes. Under a modified injunction? Yes. But isn't the, aren't the products similar enough, although not precisely the same, that using Cui Hong to people that understand its implication and what it means, you're going to lead to confusion, which is the whole purpose of the Lanham Act? Well, first of all, understanding what the words mean, I think, helps to understand why the jury came to the conclusion they did, which is that the modified trademark, old man Cui Hong, there was no chance of confusion. The word Cui Hong, it translates poorly, but it can be translated as old country, the way European immigrants would use the sense old country, or homeland, the way people from the Far East might use it. And in preparing for the argument, I cast about for a good English alternative, and what I came up with was down-home, as in down-home cooking. Now, if you have dried noodles in one part of the store, as Kim's saying, manufacturing, it says down-home noodles. In another part of the store, you have frozen meatballs. It says down-home meatballs. Could people confuse, could people believe that the same company was producing both? Possibly. But, and in fact, that's what the jury found. But if you have, in one part of the store, old man down-home noodles, or Alabama down-home noodles, and in the other part of the store you just have down-home fish sauce, as the jury found, that's not confusing. There is no chance of confusion there. Now, the reason we say the injunction was overbroad is because the only question the jury was asked in terms of modifiers was about this old man Quahog, and they said there's no chance of confusion. A part of that had to do with the packaging, though, didn't it, or did it? Am I wrong on that? Well, the graphic helps, certainly. Yes. Well, and so what I am saying is that the injunction should be modified to bar, if the injunction remains in place, should be modified to bar my client only from using the words Quahog without any modifier, without the, without a graphic, if it is, in fact, just the use of the words, as Great River has been using for many years. And since the jury found there was a possibility of confusion, then, yes, that part of the injunction should be left in place. But that's not. I'm still kind of confused. The injunction says that your client is enjoined from using the Quahog mark in connection with the sale, offering for sale, distribution, or advertising of Asian-style foods in the United States. Yes. That's what you just said that I think I heard you say was okay. I'm saying if the injunction is okay, that scope is supported by the jury's finding of confusion. And then the next paragraph specifically permits them to use the old man mark. Yes. So how would you have us change this? That it would permit us to use Quahog with any modifier that we've been using in the past? See, this isn't, there is a preexisting history of Kim Sang using the Quahog mark with other modifiers. Old man is just the, let's say, the best known, the most successful, but there are others that have been around for many years and have substantial worth to my clients. And so what I'm saying is if the injunction stands that it should be narrowed to protect the trademark that Great River has been using. The existing products, but not to expand it to other products, is that what you're? Oh, I, yes. Okay. Yes. And, Your Honor, if in fact the purpose of this injunction is to protect Great River's trademark, and we have a finding from the court that the modified trademark, that there's no confusion, then Great River should want us to be using modifiers, rather than be in a position where there is, if the injunction were overturned, where we're using the words Quahog and they are as well. So to, because there's no evidence before the trial court or this court, there's no evidence in the record that the use of other modifiers with Quahog raises a possibility of confusion with what the injunction starts out by protecting. We come to the court asking for the injunction to be modified in that sense. Now, there's, since Mr. Ross isn't here, there's really only one other thing I want to address, unless the court has any questions about the latches issue. In Great River's reply brief on the issue of whether royalties may be awarded without a history of, or showing of intent to license, one of the things that Great River has raised on their cross-appeal is that they should have been awarded damages, they should have been awarded reasonable royalties. We raised the legal authority that says that in the Ninth Circuit, unless you show that there was some sort of intent that, either a history or an intent to license your mark, then royalties are too speculative. In their reply brief, they cited out-of-circuit authority to the effect that that only applies to royalties that are based on actual damages, whereas you can still get royalties in the form of unjust enrichment without showing an intent to license. And I just want to mention to the court that in preparing for this argument, I found a decision from this circuit. It's unpublished, but it's post-1997. And I will rely on the court's call here. I will give the court that citation. It's a Ninth Circuit decision, but it's unpublished. The court wants that authority. I will give it to the court so that you have it in considering whether to follow the authority in the reply brief. Thank you very much. Any questions, Judge Farris, Judge Kamen? No. Thank you. If you like, you can give the citation to the clerk, if you'd like. Okay. Thank you. It's now 10.17 a.m. Mr. Ross, are you here? I guess not. Okay. The case is argued and submitted. Thank you. Thank you very much. We'll stand in recess. Thank you.
judges: Camp, Farris, Silverman